UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
at CLEVELAND

| | |
|---|---|
| THOMAS FOX AND CHARLENE FOX, individually and on behalf of all other Ohio residents similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN FAMILY INSURANCE COMPANY <br><br> Defendant. | ) ) ) ) ) ) Case No.: 1:20-cv-1991 ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## CLASS ACTION COMPLAINT WITH JURY DEMAND

### Introduction

COME NOW Plaintiffs, Thomas Fox and Charlene Fox (the "Foxes"), individually and on behalf of all others similarly situated, and for their Class Action Complaint against American Family Insurance Company ("AmFam") state and allege the following:

1. On or about September 13, 2019, the Foxes' house located at 37956 Caroline Drive, Avon, Ohio (the "Insured Property") suffered damage covered by policy number 34BL641901, issued to the Foxes by AmFam. The damage to the Insured Property required replacement and/or repair.

2. While AmFam did compensate the Foxes for certain damage to their property, as alleged in detail below, under its actual cash value ("ACV") calculations, AmFam systematically

and improperly depreciated the cost of the labor required to repair the damage to the Insured Property. As a result, AmFam underpaid the Foxes' claim, thus leaving them under-indemnified.

3. By underpaying the Foxes' claim, AmFam denied Plaintiffs access to funds necessary to pick up the pieces during a period of great need and tremendous stress. This is directly contrary to the purpose of insurance – to protect insureds when they are in such need.

4. AmFam's systematic underpayment of claims is not limited to the Foxes' claim. On information and belief, AmFam consistently depreciates the cost of labor from its ACV calculations for structural damage claims made throughout Ohio and has been doing so at all times relevant to the allegations of this Complaint. This includes payments to victims of natural disasters such as tornado and other wind storms, victims of fire, and those who have suffered from any other form of covered real property loss.

5. Ohio law allows an insurer to depreciate the value of building materials, but does not allow the depreciation of the cost of labor. As a result, and as detailed below, by depreciating labor costs from its ACV calculations around Ohio, AmFam has engaged, and continues to engage, in a systematic and unlawful pattern of underpayment of insurance claims.

**Parties**

6. Plaintiffs Thomas Fox and Charlene Fox are residents and citizen of Lorain County, Ohio.

7. Defendant AmFam is organized under the laws of the State of Wisconsin and headquartered in Madison, Wisconsin. AmFam is authorized to sell property insurance policies in the State of Ohio and is engaged in the insurance business in the State of Ohio, including Lorain County.

**Jurisdiction and Venue**

8. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant as Defendant has sufficient minimum contacts with the state of Ohio, is authorized to do business in Ohio and has availed itself of the privilege of conducting business in the State of Ohio.

10. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Summit County, Ohio, which is situated within the Northern District of Ohio, Eastern Division at Cleveland. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

## Factual Background

11. The Foxes contracted with AmFam for an insurance policy providing coverage for certain losses to the Insured Property. At all times relevant to this action, the Insured Property was insured under AmFam Policy No. 34BL641901.

12. On or about September 13, 2019, the Insured Property suffered damage covered by AmFam Policy No. Q535118821. The damage to the Insured Property required replacement and/or repair. The Foxes timely submitted a claim to AmFam requesting payment for the covered loss.

13. AmFam subsequently confirmed that the Foxes had sustained a covered loss to the Insured Property, and that AmFam was contractually obligated to pay the Foxes' claim for their covered loss pursuant to the terms of their insurance policy.

14. Soon after the loss, AmFam sent an adjuster to inspect the damage to the Insured Property. As set forth in written estimates and correspondence to the Foxes, AmFam's adjuster determined that the Foxes had suffered a covered loss in the amount of $11,508.39 to their home. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to the Foxes is attached as Exhibit A.

15. In calculating its payment obligations to the Foxes, AmFam subtracted from the adjuster's replacement cost estimate for the home the $1,500.00 deductible provided for in the policy plus an additional $8,864.88 for depreciation. This resulted in a net ACV payment of $1,143.51. The Foxes' policy contains a provision that holds back all costs for roof and siding until completion of that roof and siding work.

16. The estimate upon which AmFam's ACV payment for the Insured Property was based indicates that AmFam depreciated both material costs and labor costs associated with repairs to the house.

**Policy Terms and Claims Settlement Practices**

17. The insurance policy AmFam issued to the Foxes and other members of the proposed class provides replacement cost value ("RCV") coverage for both total loss of and partial loss to covered dwellings and other structures and, in some cases, ACV coverage for certain structural components.

18. At all times relevant to this cause of action, AmFam's custom and practice has been to pay its RCV policyholders the ACV of covered loss claims, net of any applicable deductible. In order to qualify for additional payment and recover the full RCV of the covered loss where RCV coverage is available under the insurance policy, the insured party must repair, rebuild or replace the damaged property within a specific time frame and submit proof to AmFam

4

that the repair or replacement was timely completed. Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

19. At all times relevant hereto, AmFam's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property then deduct depreciation.

20. In the context of insurance law, "depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY 506 (9th ed. 2009). Materials used in the repair or replacement of damaged property e.g. roofing shingles or metal, diminished in value over time due to use, wear, obsolescence, and age. As such, these are assets that can be depreciated. In contrast, labor is not susceptible to aging or wear. Its value does not diminish over time. Conceptually, and practically, depreciation simply cannot be applied to labor costs.

21. The basic purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss – no better and no worse. A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit him or theirbecause a loss occurred. See APPLEMAN ON INSURANCE 2D § 3823. An RCV policy expands the basic concept of indemnity to include coverage for repairs and replacement costs that exceed the ACV of the loss.

22. In order to recover the RCV of their covered losses, Plaintiffs and other proposed class members are required to pay the out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from Defendant. While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs.

Defendant's failure to pay the full cost of the labor necessary to repair or replace Plaintiffs' damaged property in the ACV payments left Plaintiffs under-indemnified and underpaid for their losses.

23. Defendant materially breached its duty to indemnify Plaintiffs by depreciating labor costs associated with repairs to the Insured Property in the ACV payment, thereby paying Plaintiffs less than what they were entitled to receive under the terms of the insurance contract.

24. The Ohio Department of Insurance and the Sixth Circuit have both determined that it is inappropriate and contrary to industry practice to depreciate labor costs when determining the ACV of structural damage claims.

## The Length of the Putative Class Period

25. The maximum length of the putative class period is dependent upon, *inter alia*, the accrual of the causes of action for breach of contract, including but not limited to inherent discoverability of the breach.

26. In addition, any affirmative defenses that may be plead seeking to limit the length of the putative class period are subject to judicial doctrines concerning the accrual of the putative class members' claim and the concealment of the same by Defendant.

27. AmFam concealed its practice of withholding labor as depreciation from both state regulators and putative class members.

28. At all times relevant hereto, AmFam's insurance policies neither addressed nor called for removal or repair labor to be withheld as depreciation. Similarly, AmFam's marketing materials did not address this practice, and consumers were not told of this practice when purchasing AmFam's property insurance products. AmFam never notified the Ohio Department

6

of Insurance that AmFam was in fact withholding labor within the State of Ohio and elsewhere under property policies that did not call for that practice.

29. To further conceal its practice of withholding labor as depreciation, and to avoid any disputes with regulators and policyholders who made claims, AmFam unfairly used its claim estimating software to conceal its practice from policyholders.

30. Like most property insurers, AmFam used a product called Xactimate to determine the amount of depreciation to apply to a claim. Xactimate is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property. Xactimate uses "line item" pricing to determine repair costs.

31. For all line items, Xactimate allows an insurer to depreciate labor by toggling on or off depreciation settings called "depreciate removal" and "depreciation non-material." If both of these settings are toggled on, then all line items will show the withholding of labor as depreciation.

32. AmFam affirmatively hid its use of its labor depreciation settings in Xactimate from both policyholder claimants and insurance regulators, if any, that may have investigated the same, by not disclosing its depreciation option settings in the estimates provided to policyholders (which the Xactimate setting allows).

33. In addition, AmFam did not disclose on the paperwork accompanying the Xactimate estimate that it was depreciating labor. Certain property insurers can and do disclose whether they are engaging in the practice of withholding labor as depreciation in the paperwork accompanying the Xactimate estimate.

34. Xactimate also has printing options that allows the user to print the depreciation option settings used on the estimate, specifically including whether non-materials are being

depreciated. Certain property insurers can and do print these settings on Xactimate estimates provided to policyholders.

35. As a result, AmFam took several affirmative steps to prevent an ordinary consumer or insurance regulator from knowing that AmFam depreciated labor, and not merely materials, when making ACV payments to policyholders.

36. At all times relevant hereto, AmFam was under an affirmative duty to fairly disclose the manner in which it calculated ACV payments to policyholders. In addition, when providing estimates to Plaintiffs and similarly situated policyholders, AmFam was under a duty to be truthful, and to not deceive by omission.

37. AmFam was in a superior position over policyholders to know that it was depreciating labor through Xactimate. AmFam's policyholders are not sophisticated in insurance claims handling procedures like AmFam. In addition, AmFam controlled the settings for the software, which expressly permit a company to properly limit depreciation to materials only. Moreover, policyholders do not have access to AmFam's software to determine whether it was used to depreciate labor costs. Without such access, and due to AmFam's affirmative steps taken to conceal its depreciation of labor costs, AmFam's policyholders lacked the same access to information enjoyed by AmFam and could not determine that AmFam was depreciating labor costs.

38. The practice was therefore not disclosed in the insurance policy, in the claim estimate, in the marketing materials, nor in the regulatory filings of AmFam. The affirmative steps AmFam took to conceal the cause of action for breach of the insurance contract were material facts that a reasonable person would have considered important in deciding whether to purchase insurance and/or accept ACV payments from AmFam.

39. AmFam's depreciation of labor costs was inherently undiscoverable by its very nature by its policyholders and thus AmFam's policyholders would not be—and in fact were not—aware that AmFam depreciated labor costs when calculating ACV despite policyholders' due diligence. AmFam is solely at fault for its policyholders' lack of knowledge about AmFam's depreciation of labor costs.

40. The concealment of information in estimates and other statements was performed by AMFAM with the intent that policyholders believed that only materials were being depreciated when receiving ACV claim payments, and that policyholders would not know that their claim payments were actually diminished by the withholding of repair labor through the unfair manipulation of the Xactimate software and that policyholders would not contest the concealed practice in court or through regulatory action.

## Class Action Allegations

41. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this action on their own behalf and on behalf and all others similarly situated. This action satisfies the Rule 23 requirements of commonality, numerosity, and superiority.

42. The proposed class which Plaintiffs seeks to represent is defined as follows:

All AmFam policyholders under any property policies issued by AmFam who made: (1) a structural damage claim for property located in the State of Ohio; and (2) which resulted in an actual cash value payment from which "non-material depreciation" was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate software.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the initial actual cash value payment exhausted the applicable limits of insurance. The class also excludes all claims wherein the initial actual cash value payment exhausted the applicable policy limits.

43. The members of the proposed class are so numerous that joinder of all members is impractical. Plaintiffs reasonably believe that hundreds if not thousands of people geographically dispersed across Ohio have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are identifiable through records maintained by Defendant, and proposed class members may be notified of the pendency of this action by mailed, published and/or electronic notice.

44. Common questions of law and fact exist as to all proposed class members and predominate over any questions affecting only individual proposed class members. The questions of law and fact common to the proposed class include, but are not limited to:

A. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

B. Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

C. Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiffs and other proposed class members.

D. Whether Plaintiffs and other proposed class members have been damaged by Defendant's breaches, as alleged herein, and if so:

    1. What is the nature and extent of those damages; and

    2. What relief should be awarded to Plaintiffs and other proposed class members.

45. Plaintiffs' claims are typical of the claims of all the proposed class members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct

and their claims are based on such conduct. Further, Plaintiffs' claims are typical of the claims of all proposed class members because their claims arise from the same or similar underlying facts and are based on the same factual and legal theories. Plaintiffs are no different in any material respect from any other member of the proposed class – all members of the proposed class had labor unlawfully depreciated by AmFam.

46. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the class they seek to represent. Plaintiffs have retained counsel who are competent and expAmFamnced in class action litigation and complex insurance-related cases and will fairly and adequately represent the interests of the proposed class. Plaintiffs and their counsel will prosecute this action vigorously.

47. A class action is superior to all available methods for the fair and efficient adjudication of this controversy. Joining all proposed class in one action is impracticable, and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most class members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover individual litigation could result in inconsistent adjudications of common issues of law and fact.

48. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiffs and proposed class members.  These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

49. No unusual difficulties are anticipated in the management of this case as a class action.

50. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

## Count I – Breach of Contract

51. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

52. Defendant entered into policies of insurance with Plaintiffs and other members of the proposed class.  These policies govern the relationship between Defendant and Plaintiffs and other proposed class members, as well as the manner in which claims for covered losses are handled.

53. The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

54. Plaintiffs and other proposed class members complied with all material provisions and fulfilled their respective duties with regard to their policies.

55. The policies of insurance Defendant issued to Plaintiffs and other proposed class members state that in the event of a loss Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss.  At all times relevant hereto, Defendant's custom

and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the loss, net of any applicable deductible.

56. Defendant breached its contractual duty to pay Plaintiffs and other proposed class members the ACV of their claims by unlawfully depreciating labor costs.

57. Defendant's actions in breaching its contractual obligations to Plaintiffs and other proposed class members benefitted, and continue to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiffs and other proposed class members.

58. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and other proposed class members.

59. Accordingly, Plaintiffs and other proposed class members are entitled to recover damages sufficient to make them whole for the amounts Defendant unlawfully withheld from their ACV payments as labor cost depreciation.

## Demand for Relief

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request that the Court grant the following relief:

A. Certify that this lawsuit may be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Appoint Plaintiffs and Plaintiffs' counsel to represent the proposed class;

C. Declare that Defendant has breached its contractual obligations to the Plaintiffs and the proposed class by depreciating labor costs;

D. Award Plaintiffs and the proposed class damages in an amount equal to the total amount of depreciated labor costs withheld on Plaintiff's and proposed

    class members' claims for ACV benefits that has not been paid to Plaintiffs and proposed class members;

E.     Award Plaintiffs and the proposed class prejudgment and post-judgment interest on their liquidated and unliquidated damages;

F.     Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

G.     Award the proposed class all expenses and costs of this action, and require AmFam to pay the costs and expenses of class notice and claims administration;

H.     Trial by Jury; and

I.     Any and all other relief to which Plaintiffs and the other proposed class members appear to be entitled.

Respectfully submitted,

*/s/ Stephen G. Whetstone*
STEPHEN G. WHETSTONE (0088666)
Email: steve@whetstonelegal.com
**Whetstone Legal, LLC**
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile:  614.829.3070

and

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email: edp@austinmehr.com

*Counsel for Plaintiffs and
the Proposed Class*

*To be admitted pro hac vice.*